```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```
_____

| | |
|---|---|
| **ARNEZZ STEWART,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 22-2480-JTF-tmp |
| | ) |
| **CONN APPLIANCES, INC.,** | ) |
| | ) |
| Defendant. | ) |

_____

### REPORT AND RECOMMENDATION
_____

Before the court is defendant Conn Appliances, Inc.'s ("Conn's") Motion to Compel Arbitration and Motion to Dismiss, filed on August 11, 2022.[1] (ECF No. 8.) *Pro se* plaintiff Arnezz Stewart filed a response on September 19, 2022. (ECF No. 10.) On September 22, 2022, Conn's filed attachments A (an invoice) and B (a promissory note) in support of the motion. (ECF Nos. 13 and 14.) For the reasons below, it is recommended that Conn's Motion to Compel Arbitration be granted and Stewart's complaint be dismissed without prejudice.

### I.   PROPOSED FINDINGS OF FACT

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

Conn's is a furniture retailer with its principal place of business in Beaumont, Texas. (ECF No. 1.) Arnezz Stewart is a resident of Memphis, Tennessee. (Id.) On October 8, 2019, Stewart purchased a furniture set from Conn's for a total of $4,969.88. (ECF No. 13.) He opted to finance his purchase. (Id.) During this transaction, Stewart signed an invoice and a promissory note containing an arbitration clause. (ECF Nos. 13 and 14.) The promissory note is titled "Tennessee Promissory Note and Security Agreement (With Arbitration Clause)." (ECF No. 14.) The fourth page of this document includes a box with the title "Arbitration Clause," which appears in all capital letters and is underlined. (Id.) In the text below, the box contains the language "You or I may elect to resolve any Claim exclusively by binding individual arbitration." (Id.) It further states that a "Claim includes but is not limited to: Claims about the enforcement or interpretation of any other part of this Note; Claims alleging fraud or misrepresentation; and any other Claims under common law, equity, or concerning federal, state, or local law or regulation." (Id.) Finally, the note contains a provision that states, "[t]he Federal Arbitration Act governs this Clause." (Id.)

On January 18, 2022, Stewart contacted Conn's to "resolve a balance error on the account." (ECF No. 1-1 at PageID 6.) "[A] total balance due was agreed upon and the agreed upon balance was

paid on January 18, 2022." (Id.) However, on February 17, 2022, Conn's contacted Stewart regarding an additional balance due. (Id.) Stewart was told that the previous payment had not been sufficient to close the account. (Id.) As a result of this dispute, Stewart's credit score was negatively impacted. (Id.)

Stewart filed suit in the Circuit Court for Shelby County, Tennessee on July 26, 2022. (ECF No. 1-1.) In his complaint, Stewart alleged that he "has sustained mental anguish, pain, suffering, intense emotional distress, and punitive damages" in the amount of $200,000. (Id.) On July 26, 2022, Conn's filed a notice of removal with this court. (ECF No. 1.) It alleged diversity of citizenship and an amount in controversy greater than $75,000. (Id.)

Following removal, Conn's filed the present Motion to Compel Arbitration and Motion to Dismiss. (ECF No. 8.) It asks the court to enforce the arbitration clause contained in the promissory note, compel arbitration, and dismiss this case. (Id.) Stewart filed a response on September 19, 2022. (ECF No. 10.) Stewart's response reads, in its entirety,

> Before the court is plaintiff Arnezz Stewart motion to reject arbitration and motion to proceed with filed lawsuit on August 11, 2022. Plaintiff has reached out to defendant for arbitration on multiple and many occasions and defendant has yet to return phone calls. This in my opion [sic] is the defendant's law representation is acting in bad faith. So I'm asking the court to proceed

and grant arguments contained therein.

(ECF No. 10.)

## II.   PROPOSED CONCLUSIONS OF LAW

**A.   Applicable Law**

The arbitration clause at issue is governed by the Federal Arbitration Act ("FAA"). "The FAA applies to arbitration agreements in any 'contract evidencing a transaction involving commerce.'" Swiger v. Rosette, 989 F.3d 501, 505 (6th Cir. 2021) (quoting 9 U.S.C. § 2); Stutler v. T.K. Constructors Inc., 448 F.3d 343, 345 (6th Cir. 2006). The Supreme Court has interpreted this language to refer to transactions that involve interstate commerce. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 281 (1995). The claims in this case involve a transaction for the purchase of furniture by a citizen of Tennessee from a corporation based in Texas. (ECF No. 1-1 at PageID 6.) This transaction is reflected in the promissory note containing the arbitration clause. (ECF No. 14.) Furthermore, the arbitration clause provides that "[t]he Federal Arbitration Act governs this Clause." (ECF No. 14.) No party has disputed its applicability. The undersigned will therefore analyze the agreement under the FAA.

The primary purpose of the FAA is to "'ensur[e] that private arbitration agreements are enforced according to their terms.'"

AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). Section 2 of the FAA states that an agreement "to settle by arbitration a controversy arising out of" a covered contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described this provision "as reflecting both a liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." Concepcion, 563 U.S. at 339 (internal quotation marks and citations omitted). "The FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) and Volt Info., 489 U.S. at 478); see also Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (stating that "courts must 'rigorously enforce' arbitration agreements according to their terms") (citation omitted).

"Section 4 of the [FAA] sets forth the procedure to be followed by a district court when presented with a motion to compel arbitration." Winn v. Tenet Healthcare Corp., No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407, at *1 (W.D. Tenn. Jan. 27, 2011) (citing

9 U.S.C. § 4; Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002)). In relevant part, that section provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 48; see also Great Earth Cos., 288 F.3d at 889-90; Winn, 2011 WL 294407, at *2.

A district court considering a motion to compel arbitration has four tasks: (1) it must determine whether the parties agreed to arbitrate; (2) it must determine the scope of that agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. Glazer v. Lehman Bros., Inc., 394 F.3d 444, 451 (6th Cir. 2005); Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir. 2003); Stout v. J.D.

- 6 -

Byrider, 228 F.3d 709, 714 (6th Cir. 2000). The court must compel the parties to arbitrate if it is satisfied that the agreement to arbitrate is not "in issue." Winn, 2011 WL 294407, at *2 (citing Great Earth Cos., 288 F.3d at 889). But "[i]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." Mazera v. Varsity Ford Mgmt. Servs., LLC, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting Great Earth Cos., 288 F.3d at 889). If "a reasonable finder of fact could conclude that no valid agreement to arbitrate exists," the issue is subject to resolution by a jury. Id. (quoting Great Earth Cos., 288 F.3d at 889). "The required showing mirrors that required to withstand summary judgment in a civil suit." Winn, 2011 WL 294407, at *2 (quoting Great Earth Cos., 288 F.3d at 889) (citations omitted)); see also L & R Farm P'ship v. Cargill Inc., 963 F. Supp. 2d 798, 803 (W.D. Tenn. 2013).

**B.   Analysis**

Under the framework above, the undersigned must first determine whether the parties in this case agreed to arbitrate. When determining whether a valid arbitration agreement exists, courts should "apply ordinary state-law principles that govern the formation of contracts." In re: Auto. Parts Antitrust Litig., 951 F.3d 377, 381 (6th Cir. 2020) (quoting First Options of Chi., Inc.

v. Kaplan, 514 U.S. 938, 944 (1995)). In this case, the applicable principles arise under Tennessee law. The agreement in question was executed in Tennessee. (ECF No. 14.) Performance of the contract entailed payments to Conn Credit Corporation, Inc., which is also located in Tennessee. (Id.) For these reasons, the contract is properly analyzed under Tennessee law. See Walker v. Ryan's Fam. Steak Houses, Inc., 400 F.3d 370, 377 (6th Cir. 2005) ("Tennessee law applies when analyzing the enforceability of the three named Plaintiffs' Arbitration Agreements because the agreements were executed in Tennessee and substantially performed in that state."); Cooper v. MRM Inv. Co., 367 F.3d 493, 499 (6th Cir. 2004) ("The district court correctly looked to Tennessee law, because the agreement was executed there, Cooper's employment and the alleged harassment and discharge occurred there, and neither party expected any other state's law to apply."). To be valid under Tennessee law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." Doe v. HCA Health Servs. of Tennessee, Inc., 46 S.W.3d 191, 196 (Tenn. 2001).

The undersigned finds that there is no genuine dispute that the parties mutually agreed to be bound by the arbitration clause.

In Tennessee, courts determine mutuality of assent using "an objective standard based the manifestations of the parties." T.R. Mills Contractors, Inc. v. WRH Enters., LLC, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002) (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30:6 (4th ed. 1999)). "In other words, we must determine whether a reasonable onlooker, based upon the parties' outward manifestations, would conclude that [the parties] agreed to be bound by the terms of the written contract." Moody Realty Co., Inc. v. Huestis, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007) (citing Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005)); see also Broadnax v. Quince Nursing & Rehab. Ctr., LLC, No. W2008-02130-COA-R3-CV, 2009 WL 2425959, at *3 (Tenn. Ct. App. Aug. 10, 2009). Here, the manifestations of the parties objectively demonstrate assent. The promissory note containing the arbitration agreement was presented by Conn's to Stewart. (ECF No. 14.) The arbitration clause itself was clearly labeled as such in all capital, underlined text. (Id.) Stewart's signature appears on every page of the note, including on the page containing the arbitration agreement. (Id.) All of these facts objectively indicate that both Conn's and Stewart assented to the terms of the note, including the arbitration agreement therein. As such, the requirement of mutual assent is satisfied.

- 9 -

The undersigned also finds that there is no genuine dispute that the agreement to arbitrate was supported by sufficient consideration. Under Tennessee law, "[m]utuality of promises is 'ample' consideration for a contract. A mutual promise 'in itself would constitute a sufficient consideration.'" Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 974 (6th Cir. 2007) (applying Tennessee law); see also Chevrolet Pyburn v. Bill Heard, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001) (quoting Rodgers v. S. Newspapers, Inc., 379 S.W.2d 797, 800 (Tenn. 1964)). In Seawright, the Sixth Circuit held that because the arbitration agreement was binding on both the employer and employee, regardless of who requested arbitration, there was mutuality of obligation and thus adequate consideration under Tennessee law. Seawright, 507 F.3d at 974. The same principle applies to the instant case. The arbitration agreement states that "You or I may elect to resolve any Claim exclusively by binding individual arbitration." (ECF No. 14.) This language demonstrates that both parties were equally bound by the obligation to arbitrate. That mutual promise constitutes sufficient consideration under Tennessee law.

There is also no genuine dispute that the parties' agreement to arbitrate is free from fraud, is not against public policy, and is sufficiently definite to be enforced. Stewart has not raised any arguments to the contrary, and none arise from the facts that

have been presented to the court. For these reasons, the undersigned finds that there was a valid agreement to arbitrate.

The undersigned must next determine whether the allegations in the complaint fall under the scope of the agreement. Fazio, 340 F.3d at 395. The arbitration clause in question contains the following language:

> A "Claim" is any claim, dispute, or controversy that arises from or relates to this Note, the Property purchased or financed with the proceeds this Note, this Note, this Clause or any other documents I sign or give you. A Claim includes but is not limited to: Claims about the enforcement or interpretation of any other part of this Note; Claims alleging fraud or misrepresentation; and any other Claims under common law, equity, or concerning federal, state, or local law or regulation.

(ECF No. 14.) In his complaint, Stewart alleges that he and Conn's had a disagreement over payments Stewart made under the promissory note. (ECF No. 1-1 at PageID 6.) While Stewart believed he had paid all that he owed, Conn's maintained that Stewart remained indebted to it. (Id.) This dispute clearly falls under the scope of the agreement. Stewart's complaint "arises from" and "relates to" the terms of the promissory note. (ECF No. 14.) It is also a claim about the "enforcement or interpretation" of the terms of the note. (Id.) For these reasons, the undersigned finds that Stewart's allegations are within the scope of the agreement. The undersigned is therefore satisfied that the agreement to arbitrate

is not "in issue." Winn, 2011 WL 294407, at *2.² It is therefore recommended that the parties be compelled to arbitrate.

Where all of a party's claims fall within the scope of an arbitration provision, dismissal is appropriate. Andrews v. TD Ameritrade, Inc., 596 F. App'x 366, 372-73 (6th Cir. 2014); see also Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 975 (6th Cir. 2009); Hensel v. Cargill, Inc., No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999). Because this dismissal is not on the merits, it should be without prejudice. McIntyre v. First Fin. Grp., No. 1:12-cv-00740, 2012 WL 5939931, at *5 (W.D. Mich. Nov. 27, 2012) (citing Costello v. United States, 365 U.S. 265, 285–86 (1961)). All of Stewart's claims fall within the scope of the arbitration agreement in question. The undersigned therefore recommends that his complaint be dismissed without prejudice.

### III. RECOMMENDATION

For the above reasons, the undersigned recommends that Conn's Motion to Compel Arbitration be granted. The undersigned further recommends that Stewart's complaint be dismissed without prejudice.

---

²The undersigned need not reach the third step of the analysis, as neither party has asserted a federal statutory claim. Similarly, the undersigned need not reach the fourth step of the analysis, because Stewart has not set forth any claims that are outside the scope of the arbitration agreement.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 20, 2022
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**